IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1882–83.

## Appeal of Harmony National Bank.

1. Where a mortgage is given by the maker of a promissory note to secure his indorser upon it, and both maker and indorser become insolvent without paying the note, the holder thereof is entitled to the benefit of the security, upon the equitable principle that a creditor is subrogated to the rights of a surety in a security given him by the principal debtor.

2. But this right only extends so far that the creditor stands in the place of the surety and can have no higher rights than he.

3. A. conveyed to B. certain land to secure him as indorser, and subsequently mortgaged the same, with other lands, to C., who was also A.'s indorser upon other notes: and by agreement of all three, B. relinquished his lien upon the premises in consideration of an assignment of a proportionate amount of C.'s mortgage, which in turn B. assigned to the holder of the notes which he had indorsed. In a contest between B.'s assignee and the holders of A.'s notes indorsed by C. in the distribution of the fund produced by the sale of the mortgaged premises: *Held* (reversing the decree of the court below), that C. having taken the mortgage with notice of B.'s prior lien, and having assigned a proportionate part of that mortgage in consideration of its relinquishment, the holders of the notes for which he was liable as indorser were subrogated to his right only, and took the benefit of the mortgage subject to the rights of B.'s assignee.

4. The surrender, by the grantee to the grantor, of an unrecorded deed (made prior to the passage of the Act of June 8th 1881, P. L. 84), intended as collateral security, will divest the lien of the grantee.

[428]

November 20th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from a decree of the Common Pleas of *Butler county :* Of January Term 1882, No. 12.

This was an appeal of the Harmony National Bank from a decree of the Common Pleas of Butler County, making distribution of a fund in court, arising from a sheriff's sale of land, sold as the property of W. G. Stoughton, under a judgment obtained upon a mortgage given by him to Charles McCandless.

The facts of the case were substantially as follows : In 1876 W. H. H. Riddle became the indorser on a note of W. G. Stoughton to the Harmony National Bank for $5,000 for which indorsement Stoughton assigned to Riddle $5,000 worth of stock in the same bank as collateral security.   Subsequently, at the request of Stoughton and Charles McCandless, Riddle assigned the stock to McCandless, and in lieu thereof received other stock of the same bank amounting to $3,000, and a deed from Stoughton for an undivided interest in a farm valued at $2,000 as collateral for his indorsement.   The deed was executed and delivered to the cashier of the First National Bank of Butler where it remained unrecorded.

Upon February 14th 1878, Stoughton executed a mortgage for $4,800 to McCandless as idemnity to him against indorsements, the mortgage however, not expressing upon its face for what purpose it was given. As this mortgage included the property previously conveyed to Riddle, it was agreed that the latter should relinquish his deed in consideration of participating in the mortgage security.   Riddle testified upon this point as follows : "After Mr. Stoughton gave the mortgage from which this fund has arisen to Mr. McCandless, he (Stoughton) came to me and told me what he had done ; that he had first refused to put in the mortgage the property he had secured me with, but on Mr. McCandless agreeing to assign to me a similar amount of the mortgage he consented to it ; I then called upon Mr. McCandless and asked him about this security of mine and he said that was the arrangement ; and made to me an assignment of $2,000 of this mortgage on the train between this and Pittsburgh, when he was on his way to New Mexico ; this assignment was made by Mr. McCandless, with the consent of Mr. Stoughton ; Mr. McCandless prior to this, and before the giving of the mortgage, transferred to me $3,000 of his stock in the Harmony National Bank, which was applied as a payment on the Stoughton note. . . . . My present recollection of the transaction is that this arrangement was importunately insisted upon by Mr. Stoughton ; at the time, I regarded it as so much loss to myself ; the securities he had given me I did not regard as near equal to my indorsement for it ; the properties in the mortgage, in my

opinion, were estimated by Stoughton clear beyond their value ; if that had been the arrangement at the time the paper was executed to Stoughton, I suppose it would have been put in it."

Contemporaneously with the execution of the mortgage Mc-Candless executed the following instrument to Stoughton (not under seal) :—

" Whereas, William G. Stoughton has this day deeded me nine hundred acres of land, more or less, situate in Buena Vista, Sac, Calhoun, Pocahontas counties, Iowa, in consideration of the sum of six thousand dollars, mentioned in the deed. The consideration thereof was not paid by me to him, but these lands were deeded me for the purpose of securing me against losses by reason of being his endorser on notes in Parker Savings Bank, Butler Savings Bank and the First National Bank of Butler, German National Bank of Millerstown, The Third National Bank of Pittsburgh, and also the mortgage given me by him in the Carr and McDonald farms ; and the Zachariah Phillips farm, and Hoge farm, and deed for one-third of the Shannon land, and the Cambria county land was for the same purpose, and to secure me against losses by said endorsements.

" Now in the event that the debts are paid by the said Wm. G. Stoughton, and I am not called for the payment of the same or any part thereof, I am to reconvey said land to him and satisfy said mortgage by him paying any taxes I may have paid for him on the Iowa lands, but in the event that I have to pay any portion, or all of said debts in said banks above mentioned, or their renewals, then he has the right to have one whole year from the time I have paid on said indebtedness, to procure a purchaser of the said Iowa lands at the highest price that can be procured for the same, and I am to make deed to the purchaser or purchasers and receive so much of said purchase money as is sufficient to refund the money I have paid for him, and interest thereon from the time of payment, and in case no sale can be made of the same in said time, then the purchase money of the same, viz : six thousand dollars, shall be credited on any payments I may have made for him of the date I made the payments, and if any remains in my hands it is to be paid over to him when all the debts for which I am endorser for him as aforesaid have been paid.

" February 14th 1878.          CHARLES McCANDLESS."

An assignment of $1,500 of this mortgage to H. E. Wick, as of the same date, but not under seal and without witnesses was noted in the margin of the record, as security for him against a note endorsed by him for Stoughton. By several mesne assignments this became vested in the Harmony National Bank in the reduced amount of $500, and constituted a preferred claim in their hands, being allowed without controversy. A like in-

formal assignment of $2,000 to the Butler Savings Bank to se-
cure McCandless's and Wick's indorsements on notes held by
the bank was make by McCandless on May 25th 1878.    The
claim arising therefrom was also allowed without controversy.

On the 26th or 27th of May 1878, McCandless executed to
W. H. H. Riddle an assignment of $2,000 of the mortgage in
pursuance of their agreement to secure him against the note of
Stoughton indorsed by him and held by the Harmony Bank.
After the maturity of the note Riddle assigned this security to
the bank on October 2d 1879.

The notes, made by Stoughton and indorsed by McCandless,
against which, inter alia, this mortgage was given to McCandless,
were as follows: Note for $4,528.20, due December 16th 1879;
and one for $1,431.51, due December 14th 1879, both held by
the First National Bank; and one, amounting to $13,000, held
by the Parker Savings Bank.    The date of the maturity of this
note was not stated.

On May 4th 1880, McCandless executed to Geo. H. Graham
"for value received," an assignment of all his "right title
interest and claim present or that may accrue" from the said
mortgage. Graham was not a creditor of Stoughton.   The notes
not having been paid, and both Stoughton and McCandless
being insolvent (though the precise dates of their insolvency did
not appear from the testimony), an action was brought upon the
mortgage under the caption of Charles McCandless for use of
the Harmony National Bank, Butler Savings Bank and George
H. Graham v. W. S. Stoughton, on which judgment was
obtained October 24th 1881.    The mortgaged premises brought
at sheriff's sale $2,330.50 and after the payment of the uncon-
tested claims a balance for distribution was left of $1,200.95.
This was claimed by the Harmony National Bank by virtue of
Riddle's assignment to them of the $2,000 of the mortgage, by
the First National Bank and by the Parker Savings Bank as
creditors both of the maker and indorser of the notes, against
which said mortgage was given, and by George H. Graham, as
assignee of McCandless.

Upon the questions of law thus presented, the Auditor,
appointed by the court to report distribution of the fund (James
W. Reed, Esq.), reported as follows:

"The principle is well settled that when a surety, or a person
standing in the position of a surety for the payment of a debt,
receives security for his indemnity and to discharge such
indebtedness, the principal creditor is in equity entitled to the
benefit of that security and it makes no difference that the
principal creditor did not know of this at the time, or give credit
on the faith of it: Rice's Appeal, 29 P. Smith 206; Cornwell's
Appeal, 7 W. & S. 305; Erb's Appeal, 2 Pa. R. 296; Himes.

*v.* Barnitz, 8 Watts 39 ; Carman *v.* Noble, 9 Barr 366 ; Worrall's
Appeal, 5 Wright 524; Mifflin Nat. Bank's Appeal, 38 Leg.
In. 349 ; 2 Out. 150 ; 1 Penny. 233.

The defeasance shows that the mortgage was executed to
indemnify Chas. McCandless as surety of W. G. Stoughton on
certain notes of Parker Savings Bank, Butler Savings Bank,
First National Bank of Butler, German National Bank of
Millerstown and Third National Bank of Pittsburgh. The
indemnity to Chas. McCandless was also indemnity to the
creditors named in the defeasance. At the execution of the
mortgage Mr. McCandless was the fiduciary of Mr. Stoughton
and the creditors named in the defeasance, and he · could not
rightfully assign the mortgage or any part thereof to their
detriment.

By authority of Jones on Mortgages, vol. 1, section 726,
" A mortgage to a surety to secure him is in effect a security to
the principal creditor and he is entitled to the benefit of it,"—
but "If it be a mortgage of indemnity, the security cannot
enforce it until he has been injured, or has paid the debt for
which he was surety, and in like manner the security does not
in the first instance attach to the debt as an incident to it, but
whatever equity may arise in favor of the creditor with regard
to the security, arises afterward and comes into existence when
the surety's right to call upon the security becomes fixed."
"When the debt is paid, the mortgage expires," ibid. 840, is
probably the reason of this rule. The Auditor understands,
further, from this authority, that neither surety nor creditor has
a right in esse until the debtor fails to pay the secured debt, but
pending the failure to pay, each have an inchoate right that upon
a certain contingency may become complete and absolute, and
during the pendency the mortgagee is quasi trustee for both
debtor and creditor, and a mortgagee's assignment of the security
before his rights were complete would pass no title, because of
the cited authority he would have no title to assign. His assign-
ment after his right had vested, with notice of the equities of
creditors, would be void as against them because, by the same
authority, their rights vested contemporaneously with his. " A
mortgage distinct from the debt has no value in itself, and if
assigned, the assignee holds it in trust for the holder of the
note or debt." Ibid. 838. And the Auditor is of opinion that
the assignee accepting the assignment, with notice of the
creditors' equities, would take for their use, and would stand
in the same fiduciary relation towards them as did his assignor.
The question might have been asked : Why cannot a surety
holding a mortgage as indemnity, assign it before the equity of
a creditor arises, if he might under same circumstances sur-
render it? By the authority cited, section 387 : "Even after

insolvency of the parties primarily holders for the debt, the mortgagee may surrender the security, if he does it in good faith, and before any claim is made upon him for it.' There is undoubtedly wide enough difference between an assignment and a surrender, but the authority stated leaves the reason of the rule cited a matter of conjecture. Perhaps the reason might be sought from what follows, in same paragraph : 'But after the principal debtor has become insolvent, the security cannot make a valid agreement with the holder or any party interested in one of the notes on which he is indemnified by the mortgage, that the security shall be first applied to such note ; the holders of all such notes are entitled in equity to share the property in proportion to their respective claims. When a mortgage is given to indemnify an indorser the creditor has an equitable claim to the security, and after the liability is fixed is entitled to have the mortgage assigned to him. This is the rule not only where the condition is that the mortgagor shall pay the debt, but also where it merely stipulates that he shall indemnify the surety.' These principles seem to establish that the mortgagee has no power, in any manner, to divert the condition of the instrument to any other channel than originally provided for. To do so might give one creditor an undue advantage over another and fraud might be perpetrated with impunity and with every semblance of legality by assignment of the security to a confederate for a nominal consideration, and thereby defeating the rights of *bona fide* creditors. In other words, an insolvent debtor, by collusion with his indemnified surety and a third person, might place all his mortgaged property out of the reach of his creditors, to be used for his own future benefit. And further, an assignment by the mortgagee before forfeiture of the indemnity, if held valid, would presuppose an absolute right in him by the mortgage from date of execution, instead of from date of forfeiture. But the effect of surrender of the surety is entirely different. No injury could ensue in consequence thereof and all the debtor's creditors would be left as before— upon an equal footing.

"From these premises it follows, that while the indemnity to the surety exists the incipient rights of the indorsed creditors cannot be defeated by any collusion between the mortgagor and mortgagee ; and although the mortgagor would request the mortgagee to assign to a third person, the Auditor cannot see that such an assignment would be more valid as against secured creditors, than if the mortgagee had made it of his own volition. The third person, by such proceeding, might take all of what otherwise would go to the secured creditors, if the mortgage remained as originally or was surrendered.

"The Auditor is fully satisfied from the testimony referred to

5 OUTERBRIDGE—28

in the text of the report, that Mr. Riddle cannot claim a right by the mortgage other than by his assignment, and that he took the assignment with notice of the equities of other creditors secured by the mortgage, and that consequently he has no right as against them, nor has his assignee for the reasons before reported. . . . . .

. . " The demand of Geo. H. Graham upon the fund for distribution rests upon the following : .

" May 4th 1880. For value received I assign to Geo. H. Graham all my right, title, interest and claim in this mortgage present or that may accrue to me through the reversion of the portion assigned to the Butler Savings Bank. .

. " (Signed) . . CHAS. McCANDLESS. ¡

. . " As before stated, the mortgage was given Chas. McCandless to secure him as endorser of W. G. Stoughton. The endorsed notes have not been paid—until they are paid their holders are entitled to the security given. Mr. McCandless. Mr. McCandless and Mr. Stoughton are both insolvent—unless the creditors can realize from the security they have nothing. Their rights vested in the security from the time of its execution until they were paid or otherwise satisfied. Mr. McCandless could acquire no title against them, consequently Mr. Graham could take by his assignment what Mr. McCandless had and no more. Mr. McCandless' rights were postponed to the secured creditors. So must be Mr. Graham's. The stream can rise no higher than its source. So far as the evidence goes Mr. Graham cannot be aggrieved, because there is no allegation that Mr. McCandless pretended to have what he had not. The assignment was of his right, title and interest only. That he had certain equities cannot be denied, but none such as would entitle him to any part of this fund, and at all events Mr. Graham has not shown that he gave any consideration for the assignment, which the Auditor holds he would be bound to do in order to prevail against bona fide creditors." . . . . . .

. The auditor accordingly awarded the fund in court to the First National Bank and the Parker Savings Bank pro rata. Exceptions were filed thereto by the Harmony National Bank and dismissed by the court below, and the report of the auditor was confirmed. McJUNKIN, P. J. (no opinion filed). From this decree of the court the Harmony National Bank took this appeal, assigning for error the action of the court in dismissing the exceptions filed by them to the report of the Auditor, and the decree confirming the same.

*H. H. Goucher* (with him *W. H. H. Riddle*), for appellants.—" A mortgage given to indemnify a surety or endorser does not in the first instance attach to the debt :" Jones

on Mortgages, § 387, p. 281. Worrall's Appeal, 5 Wright 527, where it is clearly decided .that "securities given to protect sureties do not become trusts for the creditors." Such securities are not virtual trusts. They are taken by the surety or endor- ser for his individual protection against loss. The principal creditor has no rights or interest in them in the first instance, nor any right to them except the equitable right of subrogation upon failure or neglect of the surety or endorser to use them for his benefit, in default of payment of the debt by both the debt- or and his surety or endorser, at maturity. A distinction, how- ever, is to be taken in the nature of the security, whether it is given to secure the debt as well as for the personal protection of the surety or endorser, or whether it is given for the person- al protection of the surety or endorser merely. The former is a trust for the creditor, the latter is not: Brandt on Suretyship and Guaranty, § 284, p. 384; also, § 285, p. 385; 1 Jones on Mortgages, § 726.

In this case default was not made until December 1879. Until then McCandless had no right to proceed on the mort- gage to compel payment, and the equities of the bank can ex- tend no further than his. Subrogation will not be allowed to work injury to the rights of third parties: 'Erb's Appeal; 2 P. & W. 296; Kyner v. Kyner, 6 Watts 221; Coates' Appeal, 7 W. & S. 99; McGinnis' Appeal, 16 Pa. St. 445; Lloyd v. Galbraith, 32 P. St. 103; Cooper v. Platt, 39 Pa. St. 528. Again, the doctrine of subrogation is one of mere equity and will not be enforced at the expense of a legal right: Fink v. Mahaffy, 8 Watts 384; Bank of Pa. v. Potius, 10 Watts 148; Lloyd v. Galbraith, 32 Pa. St. 103. The relinquishment of his deed by Riddle was a consideration for the assignment to him by McCandless.

T. C. Campbell, for appellees.—It is a rule of law that "where a surety, or a person standing in the position of a surety, for the payment of a debt, receives security for his indemnity, and to dis- charge such indebtedness, the principal creditor is, in equity, en- titled to the benefit of that security; and it makes no difference that the principal creditor did not know of this at the time, or give credit on the faith of it:" Kramer's Appeal, 1 Wr. 71; Rice's Appeal, 29 Smith 168; Himes v. Barnitz, 8 W. 44; Bank v. Douglass, 4 W. 95. The distinction made in Brandt on Surety- ship seems to be this, that where the liability is contingent, as in cases of official bonds where no breach has occurred, the con- tingency must come or the injury be sustained before the right of indemnity enures to the creditor. But not so where, as in this case, the liability of the surety is fixed and where the con- tract is made not only for the personal benefit of the surety but

with the idea of a pledge for the debt or providing means for its payment.' If the security is merely an indemnity, it is personal to the surety, but where it is a security for the debt the surety holds as trustee : Brandt on Suretyship, § 284.

And so in the citations to Jones on Mortgages by appellant, the cases are confounded.

In the present case the surety could call on the debtor at any time to protect him and could use the security for that purpose : Bank *v.* Douglass, 4 Watts 95 ; Jack *v.* Morrison, 12 Wright 113 ; Kramer's Appeal, 1 Wright 171.

Riddle taking the assignment as collateral for a pre-existing claim gave no consideration, was not a bona fide holder for value, and therefore took subject to the equities under which his assignor held : Bronson *v.* Silverman, 28 P. F. Smith 94 ; Lenheim *v.* Wilmarding, 5 P. F. Smith 73 ; Kramer's Appeal, 1 Wright 71.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1883.

From the Auditor's report, and the papers of this case, we gather the following facts : On the 14th of February 1878, W. G. Stoughton executed a mortgage, in the sum of $4,850 to Charles McCandless, on four several tracts of land situated in the county of Butler, among which was the one undivided third part of a tract of one hundred and twenty acres in the township of Oakland.

On the same day, and as part of the same transaction, McCandless executed and delivered to Stoughton a paper in which was set forth, among other things, that the mortgage was given to secure him (McCandless) against any loss he might sustain by reason of his endorsements of certain notes of Stoughton, in the Parker Savings Bank, the Butler Savings Bank, the First National Bank of Butler, the German National Bank of Millerstown, and the Third National Bank of Pittsburgh, and if the notes were paid by Stoughton, or, if McCandless was otherwise released from their payment, then, and in that case, the mortgage was to be satisfied.

Previously to this time, however, W. H. H. Riddle, had become endorser for Stoughton, on a note of some five thousand dollars which was discounted by the Harmony National Bank, and as part security for this endorsement, Stoughton had executed a deed to Riddle for the one-third part of the one hundred and twenty acre tract of land in Oakland Township, afterwards included in the mortgage above mentioned.

This deed was not recorded, but deposited for safe-keeping in the bank last named. We need hardly stop to say that this

deed, given, as it was, as security for Riddle's endorsements, was equitably a mortgage, the defeasance resting in parol, though the auditor seemed to think that the fee was thereby vested in the grantee. This was a mistake; a mistake which, perhaps, led to the erroneous disposition of this case. Then, when Stoughton came to execute his mortgage to McCandless, he refused to put into it the land thus deeded, unless McCandless would first agree to assign to Riddle two thousand dollars thereof, a sum deemed equivalent to the value of the land. This, McCandless agreed to do, and this agreement was consummated by the assignment of the 26th or 27th of May 1878, and which Riddle, in turn, assigned to the appellant. It will thus be seen that so far from there being no consideration passing from Riddle to Stoughton and McCandless for the assignment, as the Master assumed, there was a full and adequate one, for Riddle's acceptance thereof operated to release his prior lien upon the land; a lien, of which, though not of record, McCandless had notice, hence binding as to him. Now, McCandless and Stoughton both being insolvent, there is no doubt or dispute about the position assumed by the learned auditor, that equitably the payees of the unpaid notes were subrogated to the rights of the endorser in the mortgage which was given to secure him. But they cannot be subrogated to any other right than that which he had. They but stand in his place; they cannot deprive Riddle of a right which was contemporary with that of McCandless. The mortgage was executed as well for the use and security of the latter as of the former, hence the creditors of the one cannot interfere with that which in equity and good faith belongs to the other. It follows, that there should have been a pro rata distribution between the appellant, as assignee of Riddle, and the creditors of Stoughton and McCandless, in the proportion that two thousand bears to twenty-eight hundred and fifty.

We may say further, that we do not concur in the position assumed by the counsel for the appellant, that Riddle's assignment, because of his superior equity, was first entitled to payment even to the exhaustion of the fund. Riddle's equity was not superior to that of McCandless. It is true his lien upon the premises was the earlier of the two, but the very foundation of his right in and to the subsequent mortgage, and in the fund now in court, rests upon the fact that he voluntarily relinquished that lien in consideration of the interest which he obtained in that mortgage. Such being the case, it is obvious, that he cannot now go back to that which he, for a valuable consideration, abandoned.

We think the auditor's charges are out of proportion to the

work necessary to the disposition of a case of this kind, hence direct their reduction to the sum of one hundred dollars.

The decree of the court below is reversed at the costs of the appellees, and it is ordered that redistribution be made in accordance with the above and foregoing opinion.